IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SOFIA BAHENA ORTUÑO, et al.,

    Petitioners-Plaintiffs,

v.

DAVID JENNINGS, et al.,

    Respondents-Defendants.

Case No. 20-cv-02064-MMC

**ORDER RE: PETITIONERS' MOTION FOR TEMPORARY RESTRAINING ORDER; DIRECTIONS TO PARTIES**

Before the Court is petitioners' Motion, filed March 24, 2020, for a Temporary Restraining Order, by which they seek an order releasing them from detention. Respondents have filed opposition, to which petitioners have replied; in addition, with leave of court, respondents have filed two supplemental declarations, to which petitioners have filed their objections.

Having read and considered the above-referenced filings,[1] the Court rules as follows to the extent the motion is brought on behalf of all petitioners other than Olvin Said Torres Murillo and Mauricio Ernesto Quinteros Lopez, as to whom the Court, for the reasons stated in its order of April 3, 2020, has deferred ruling pending further briefing.

## BACKGROUND

Petitioners are individuals who are being detained at either the Yuba County Jail ("Yuba") or the Mesa Verde ICE Processing Facility ("Mesa Verde"), pending ongoing

---

[1] On April 6, 2020, petitioners filed a Statement of Recent Decisions and respondents filed a Statement of Recent Decision, both of which the Court has also considered.

removal proceedings or effectuation of a final order of removal.[2] Petitioners allege they are being detained under circumstances that violate their due process rights, specifically, their "substantive due process right" to be free from "conditions of confinement that amount to punishment or create an unreasonable risk to detainees' safety and health." As relief, petitioners seek, pursuant to 28 U.S.C. § 2241, an order of release from detention.

**LEGAL STANDARD**

"Temporary restraining orders are governed by the same standard applicable to preliminary injunctions." Quiroga v. Chen, 735 F. Supp. 2d 1226, 1228 (D. Nev. 2010). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 24 (2008). Additionally, where, as here, a plaintiff seeks a mandatory injunction, the plaintiff, to establish the first factor, must show a "clear likelihood of success on the merits." See Stanley v. University of Southern California, 13 F.3d 1313, 1316 (9th Cir. 1994).

**DISCUSSION**

The world is currently experiencing a global pandemic in light of the coronavirus COVID-19. As of today's date, more than 419,000 persons in the United States have become infected with COVID-19, more than 14,250 persons have died, and there is no indication the pandemic has reached its peak.

In a very short period of time, and particularly in the past month, COVID-19 has brought dramatic changes to the country, including the State of California's issuance of an order directing all persons living in the state to "stay home" and to "at all times practice

---

[2] Although petitioners Sofia Bahena Ortuño and Roxana del Carmen Trigueros Acevedo were, at the time the motion was filed, being detained at Mesa Verde, both said petitioners subsequently were released. (See Defs.' Opp. at 5:23-24; Supp. Bonnar Decl. ¶ 5.) Accordingly, to the extent the motion is brought on their behalf, it will be denied as moot.

2

social distancing." See Cal. Executive Order N-33-20. The Centers for Disease Control and Prevention ("CDC") likewise has advised all person to "stay home as much as possible," to "take everyday precautions to keep space between yourself and others," and to "avoid crowds as much as possible," noting that the "risk of exposure . . . may increase in crowded, closed-in settings with little air circulation." See www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/get-ready.html.

Although there is no indication, at least in the record before the Court, that any particular person or type of person is more susceptible to becoming infected with COVID-19, the CDC has determined that certain types of persons who do became infected are significantly more likely to have a severe illness or to die, including persons who are 65 years of age or older, and those who have certain medical conditions, such as moderate to severe asthma, diabetes, chronic kidney disease, liver disease and hypertension. See www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html; www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html.

Petitioners argue that each of them has one or more of the above-described high-risk factors, and that they are unable to engage in social distancing and to take other steps to avoid infection. Under such circumstances, they seek release from detention until the pandemic is over.

In opposing the motion, respondents make two threshold arguments, specifically, (1) that petitioners lack Article III standing and (2) that a claim challenging conditions of confinement cannot be brought under § 2241.

With respect to standing, respondents argue, in essence, that no petitioner presently has COVID-19 and that any petitioner's likelihood of becoming infected is speculative. COVID-19 infections, however, are rapidly increasing in the United States, including California, and, when introduced into a confined space, such as a nursing home, a cruise ship, and, recently, a naval aircraft carrier, it can rapidly spread. Indeed, it has quickly spread in a number of jails and prisons. (See Wells Decl. Exs. C-E.) Under such circumstances, the Court finds petitioners have standing to assert their claims.

Turning to petitioner's reliance on § 2241, which provides district courts with the power to issue writs of habeas corpus to persons being held in the custody of the United States, the Court notes that the Ninth Circuit, as early as 1974, has found it "fairly well established" that "federal habeas corpus actions are now available to deal with questions concerning both the duration and the conditions of confinement." See Workman v. Mitchell, 502 F.2d 1201, 1208 n.9 (9th Cir. 1974). Respondents have not cited any later case holding to the contrary. Accordingly, the Court finds petitioners may seek, pursuant to § 2241, relief from what they allege are unconstitutional conditions of confinement, and next addresses the factors that are "pertinent in assessing the propriety of any injunctive relief." See Winter, 555 U.S. at 32.

As to the first factor, likelihood of success on the merits, petitioner's claim, as noted, is that their conditions of confinement, in light of the present COVID-19 pandemic, are unconstitutional. In evaluating a claim that a detainee's conditions of confinement are unconstitutional, "the proper inquiry is whether those conditions amount to punishment." See Bell v. Wolfish, 441 U.S. 520, 535 (1979). "[P]unitive conditions," i.e., conditions amounting to punishment, occur "(1) where the challenged restrictions are expressly intended to punish, or (2) where the challenged restrictions serve an alternative, non-punitive purpose but are nonetheless excessive in relation to the alternative purpose, or are employed to achieve objectives that could be accomplished in
. . . alternative and less harsh methods." See Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) (internal quotations and citations omitted).

Here, petitioners do not assert respondents, by detaining them in the conditions petitioners challenge, are intending to punish them. Nor do petitioners dispute respondents' asserted purpose in detaining them, specifically, to ensure petitioners' presence at immigration proceedings and the government's ability to effectuate any final orders of removal. Consequently, the issue here presented is whether petitioners are likely to show that, given their alleged health concerns, their detention is excessive in relation to the government's needs. In resolving that issue, the Court considers each

4

petitioner's showing separately, as "constitutional rights are personal."  See Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973).

First, as to Ricardo Vasquez Cruz ("Vasquez Cruz"), Ernesto Abroncio Uc Encarnacion ("Uc Encarnacion"), Julio Cesar Buendia Alas ("Buendia Alas"), and Marco Montoya Amaya ("Montoya"), the Court finds petitioners have not shown a "clear likelihood of success on the merits."  See Stanley, 13 F.3d at 1316.[3]  Specifically, the record lacks evidence clearly demonstrating a medical condition that places any of them at a "higher risk for severe illness from COVID-19."  See www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.[4]  Vasquez Cruz describes himself as diabetic, but Yuba medical staff lists him as prediabetic (see Kaiser Decl. ¶ 13), and he is taking metformin, a drug commonly used to treat prediabetics, see www.mayoclinic.org/diseases-conditions/prediabetes/diagnosis-treatment/drc-20355284; prediabetes has not been recognized by the CDC as a high-risk factor.  Uc Encarnacion told his immigration counsel he had asthma as a child (see Yamane Decl. ¶ 5), but he has denied to the Yuba medical staff that he presently has asthma (see Kaiser Decl. ¶ 11).  Although Buendia Alas states that, on dates that are undisclosed, he had "readings of high blood pressure" (see Buendia Alas Decl. ¶ 5), there is no showing he has been diagnosed with hypertension, i.e., that his blood pressure "consistently ranges from 130-139 systolic or 80-89 mm Hg diastolic," see www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings.  Lastly, the parasitic infection with which Montoya has been "tentatively diagnosed" (see Wolfe-Roubatis Decl.

---

[3]In making this finding and the findings set forth below, the Court has considered hearsay evidence offered by petitioners and by respondents.  See Flynt Distrib. Co. v. Harvey, 734 F. 2d 1389, 1394 (9th Cir. 1984) (holding district court did not err by considering hearsay evidence offered in connection with motion for preliminary injunction; finding "trial court may give even inadmissible evidence some weight when to do so serves the purpose of preventing irreparable harm before trial").

[4]Petitioners do not argue, and the Court does not consider whether, during the COVID-19 pandemic, it is unconstitutional for respondents to detain in crowded facilities persons who are not at such increased risk.

¶¶ 8-9), is not included in the list of conditions identified by the CDC as high risk factors, and, although he states he has tuberculosis, his last chest x-ray was "within normal limits" and his last skin test was "found negative for TB" (see Bonnar Decl. ¶ 15). Accordingly, issuance of a temporary restraining order as to the above four petitioners will be denied.

The Court finds, however, petitioners have clearly shown four other petitioners are at high risk of severe illness if infected with COVID-19. The parties agree Salomon Medina Calderon ("Medina Calderon") has been diagnosed with and receives treatment for diabetes (see Medina Calderon Decl. ¶ 6; Kaiser Decl. ¶ 10); he has been "hospitalized many times despite taking diabetic medication" and has lost all vision in one eye and 70% of his vision in the other (see Medina Calderon ¶ 6). The parties agree Gennady V. Lavrus ("Lavrus") likewise has been diagnosed with and receives treatment for diabetes (see Upshaw Decl. ¶ 5; Kaiser Decl. ¶ 12); his condition is of a severity that requires him to take insulin by injection (see Upshaw Decl. ¶¶ 5, 7). The parties agree Charles Joseph ("Joseph") has asthma (see Joseph Decl. ¶ 13; Bonnar Decl. ¶ 10), which condition has required him, for the past six years, to use albuterol (see Joseph Decl. ¶ 13). Lastly, J Elias Solorio Lopez ("Solorio Lopez") is 82 years of age (see Waldron Decl. ¶ 3; Bonnar Decl. ¶ 11), and, as reported by a physician who examined him in January 2020, has a "history of hypertension" and "polycystic kidney disease," as well as "severe malnutrition" and other ailments (see Waldron Decl. ¶ 8; Haar Decl. ¶ 2 and attachment thereto).

The Court further finds petitioners have clearly shown the above-referenced four petitioners cannot practice meaningful social distancing in their respective detention facilities. Petitioners have offered evidence, undisputed by respondents, that detainees, both at Yuba and Mesa Verde, are kept in close proximity, i.e., less than six feet apart, not only when in their living quarters (see Medina Calderon Decl. ¶ 16; Upshaw Decl. ¶ 19; Minchaca Ramos ¶¶ 12, 15; Joseph Decl. ¶¶ 9-10; Knox Decl. ¶ 9), but also during meals (see Supp. Weisner Decl. ¶ 4.ii; Rodarte ¶ 10; Knox Decl. ¶ 10; Bent Decl. ¶ 11;

6

Joseph Decl. ¶ 11), and, at Yuba, when lining up for temperature checks as well (see Supp. Upshaw Decl. ¶ 6; Rodarte ¶ 10).[5] Additionally, petitioners have offered evidence, undisputed by respondents, that detainees at Yuba and Mesa Verde have not been provided with masks (see Yamane Decl. ¶ 12; Rodarte Decl. ¶ 9; Bent Decl. ¶ 13; Wolfe-Roubatis Decl. ¶ 13), and respondents do not assert they have any plans to do so. Similarly, there is undisputed evidence that staff at Yuba and Mesa Verde, with limited exception, do not wear masks or other protective equipment when in the immediate vicinity of detainees. (See Yamane Decl. ¶ 12; Upshaw Decl. ¶¶ 12, 14; Supp. Upshaw ¶¶ 7-8; Rodarte Decl. ¶ 9; Bent Decl. ¶ 13; Knox Decl. ¶¶ 7, 15; Supp. Joseph Decl. ¶ 7.)

Although, as noted, it is undisputed that respondents have a non-punitive purpose in detaining Medina Calderon, Lavrus, Joseph, and Solorio Lopez, namely to ensure their respective appearances at immigration proceedings and to effectuate any final orders of removal, the Court finds petitioners have made a strong showing that respondents' detaining them in the above-referenced conditions, in spite of their knowledge of said petitioners' respective high-risk status, is "excessive in relation to [that] purpose." See Jones, 393 F.3d at 932. Accordingly, with respect to these four petitioners, the Court finds a clear showing has been made that they are likely to succeed on the merits of their Fifth Amendment claim.

Next, with respect to the question of whether petitioners have shown a likelihood of irreparable harm, the Court first notes the virus, as explained by the CDC, "is thought to spread mainly from person-to-person, through respiratory droplets produced when an infected person coughs or sneezes," and that such "droplets can land in the mouths or noses of people who are nearby or be launched into the air and inhaled into someone's lungs." See www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/faq.html. Further, the Court finds petitioners have shown Medina Calderon, Lavrus, Joseph, and Solorio Lopez cannot meaningfully, if in any manner, adhere to the

---

[5] There is no evidence Mesa Verde conducts temperature checks of detainees, other than one initially at "intake." (See Moon Decl. ¶ 18.)

advice the country's health officials, including those at the CDC, have repeatedly given to all persons in the United States as to how to avoid becoming infected with COVID-19, specifically, to engage at all times in social distancing, to use protective equipment such as masks, gloves, or other coverings when in close contact with others, and to frequently wash or otherwise sanitize one's hands.

Under such circumstances, the Court finds petitioners have made a sufficient showing that Medina Calderon, Lavrus, Joseph, and Solorio Lopez, as persons at high risk of severe illness or death if infected with COVID-19, are likely to incur irreparable injury in the absence of any relief from their present conditions of confinement.

The Court next finds the balance of hardships tips in favor of Medina Calderon, Lavrus, Joseph, and Solorio Lopez. As noted, none of these petitioners is in a position to meaningfully limit his exposure to COVID-19 while at Yuba or Mesa Verde. Although respondents may have concerns about flight risk or other matters,[6] the Court intends to address those issues by imposing reasonable conditions upon release, as discussed below.

Lastly, the Court finds, under the highly unusual circumstances presented, i.e., a global pandemic of a type not seen within recent memory, the public interest is served by the requested injunction. Specifically, the public interest in promoting public health is served by efforts to contain the further spread of COVID-19, particularly in detention centers, which typically are staffed by numerous individuals who reside in nearby communities.

Accordingly, the Court will grant the motion to the extent it is brought on behalf of Medina Calderon, Lavrus, Joseph, and Solorio Lopez.

//
//
//

---

[6] To date, respondents have not identified any concern specific to any of these four individuals.

8

The Court will not, however, order any such petitioner to be released without reasonable conditions, and, as to each such petitioner, will include the following conditions in its order of release:

(1) Petitioner is to reside and shelter in place at an address to be specified in said order.[7]

(2) Petitioner shall be transported by a person to be specified in said order from his place of detention to the residence where he will reside and shelter in place.[8]

(3) Pending further order of the Court, petitioner shall not leave the residence where he will shelter in place, except to obtain medical care, to appear at immigration court proceedings, or to obey any order issued by the Department of Homeland Security.

(4) Petitioner shall not violate any federal, state, or local law.

In addition, the Court will direct the parties' respective counsel to meet and confer, by email, telephone, or other means, and to propose, in a joint statement any additional reasonable conditions.

//
//
//
//
//
//
//
//
//
//
//

---

[7]The address for each petitioner is to be provided by petitioners' counsel.

[8]The name of the transporter of each petitioner is to be provided by petitioners' counsel.

9

**CONCLUSION**

For the reasons stated, petitioners' motion is hereby GRANTED in part and DENIED in part, as follows:[9]

1. To the extent the motion is brought on behalf of petitioners Sofia Bahena Ortuño and Roxana del Carmen Trigueros Acevedo, the motion is DENIED as moot.

2. To the extent the motion is brought on behalf of petitioners Ricardo Vasquez Cruz, Ernesto Abroncio Uc Encarnacion, Julio Cesar Buendia Alas, and Marco Montoya Amaya, the motion is DENIED.

3. To the extent the motion is brought on behalf of petitioners Salomon Medina Calderon, Gennady V. Lavrus, Charles Joseph, and J Elias Solorio Lopez, the motion is hereby GRANTED, and said petitioners shall be released upon issuance of an order setting conditions of release. The parties' respective counsel are hereby DIRECTED to meet and confer forthwith and to propose, in a joint statement to be filed no later than April 10, 2020, at 11:00 a.m., any additional reasonable conditions.

4. Respondents are hereby DIRECTED to show cause, no later than April 22, 2020, why, as to Salomon Medina Calderon, Gennady V. Lavrus, Charles Joseph, and J Elias Solorio Lopez, a preliminary injunction should not issue. Petitioners' reply shall be filed no later than seven days after any such response is filed. As of the date the reply is filed, the Court, unless the parties are otherwise advised, will take the matter under submission.

**IT IS SO ORDERED.**

Dated: April 8, 2020

MAXINE M. CHESNEY
United States District Judge

---

[9]As noted in the Court's order of April 3, 2020, the Court has deferred ruling on the motion to the extent it is brought on behalf of Olvin Said Torres Murillo and Mauricio Ernesto Quinteros Lopez. To such extent, the motion remains pending.

10