WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
ANGÉLICA SALCEDA (SBN 296152)
asalceda@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Attorneys for Petitioners-Plaintiffs*
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
FRANCISCO UGARTE (CA SBN 241710)
francisco.ugarte@sfgov.org
GENNA ELLIS BEIER (CA SBN 300505)
genna.beier@sfgov.org
EMILOU H. MACLEAN (CA SBN 319071)
emilou.maclean@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: 415-553-9319
Fax:    415-553-9810

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Sofia Bahena Ortuño; Gennady Valeryevich Lavrus; Claude Bent; Charles Joseph; Salomon Medina Calderon; Ricardo Vasquez Cruz; J Elias Solorio Lopez; Olvin Said Torres Murillo; Julio Cesar Buendia Alas; Marco Montoya Amaya; Mauricio Ernesto Quinteros Lopez; Roxana del Carmen Trigueros Acevedo; Ernesto Ambrocio Uc Encarnacion; <br><br> Petitioners-Plaintiffs, <br><br> v. <br><br> DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, <br><br> Defendants-Defendants. | Case No. 3:20-CV-02064-MMC <br><br> **PETITIONERS-PLAINTIFFS' REPLY IN SUPPORT OF PRELIMINARY INJUNCTION RE PETITIONERS MEDINA CALDERON, LAVRUS, JOSEPH AND SOLORIO LOPEZ** <br><br> JUDGE: MAXINE M. CHESNEY |

1

BREE BERNWANGER* (NY SBN 5036397)
bbernwanger@lccrsf.org
TIFANEI RESSL-MOYER (SBN 319721)
tresslmoyer@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

2

3

4

5

6

7

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

8

9

10

11

JORDAN WELLS (SBN 326491)
jwells@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

*Attorneys for Petitioners-Plaintiffs*
*Motion for Admission *Pro Hac Vice*
Pending

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................ 1

II.   MOTION TO STRIKE PORTIONS OF SUPPORTING DECLARATIONS ................... 2

III.   REPLY TO RESPONDENTS' STATEMENT OF FACTS............................................ 2

    A.   ICE's Claimed Remedial Measures Are Utterly Ineffectual ................................. 3

        1.   ICE's "Pandemic Response Requirements" Are Insufficient.................... 3

        2.   The Claim That There Are No Suspected or Confirmed COVID-19 Cases in Mesa Verde or Yuba is Not Credible ............................................. 4

        3.   Defendants' Claim That They Are Reducing Detainee Populations Is Misleading.................................................................................................... 4

        4.   Defendants Have Taken Virtually No Steps to Achieve Social Distancing .................................................................................................... 5

        5.   Unless Social Distancing Can Be Achieved, Other Measures Will Be Inadequate.............................................................................................. 6

    B.   Petitioners ........................................................................................................ 7

IV.   ARGUMENT ............................................................................................................ 8

    A.   The Court Has Jurisdiction Over Petitioners' Claims.......................................... 9

    B.   Petitioners Have Article III Standing.................................................................. 11

    C.   Release is the Appropriate Remedy for a Conditions of Confinement Claim...... 12

    D.   Petitioners Satisfy the Requirements for a Preliminary Injunction ..................... 12

        1.   Petitioners Have Shown Likelihood of Succeeding on the Merits .......... 12

            a.   The Court may order release notwithstanding Defendants' assertion of "mandatory detention" .......................................... 12

            b.   Petitioners have established that the conditions of confinement violate the Fifth Amendment ................................. 12

        2.   Petitioners Have Shown Irreparable Harm .............................................. 13

        3.   The Balance of Interests and Public Interest Favor Petitioners............... 13

    E.   The Preliminary Injunction Should Not Contain a "Self-Executing Expiration Date" or Additional Conditions of Release.......................................... 13

V.   CONCLUSION............................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Bent v. Barr*,
  No. 19-cv-06123-DMR, 2020 WL 1812850 (N.D. Cal. Apr. 9, 2020) ................................. 13

*Brenneman v. Madigan*,
  343 F. Supp. 128 (N.D. Cal. 1972) ........................................................................... 11

*Brown v. Plata*,
  563 U.S. 493 (2011) ................................................................................................ 11

*Carmona v. Aitken*,
  No. 14-CV-05321-JSC, 2015 WL 1737839 (N.D. Cal. 2015) ................................. 11

*Cruz-Zavala v. Barr*,
  2020 WL 1904469 (N.D. Cal. Apr. 17, 2020) ......................................................... 9

*Doe v. Barr*,
  No. 20-cv-02141-LBR, 2020 WL 1820667 (N.D. Cal. Apr. 12, 2020)..................... 13

*Doe v. Barr*,
  No. 20-CV-02263, 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020) ........................... 11

*Duran v. Elrod*,
  713 F.2d 292 (7th Cir. 1983) ................................................................................. 11

*Ex Parte Young*,
  209 U.S. 123 (1908)................................................................................................. 10

*Helling v. McKinney*,
  509 U.S. 25 (1993) ................................................................................................. 13

*Inmates of the Allegheny Cty. Jail v. Wecht*,
  565 F. Supp. 1278 (W.D. Pa. 1983)........................................................................ 11

*Judalang v. Chertoff*,
  562 F.Supp.2d 1119 (S.D. Cal. 2008) ................................................................ 13, 15

*Khodr v. Adduci*,
  697 F.Supp.2d 774 (E.D. Mich. 2010)..................................................................... 12

*Larson v. Domestic & Foreign Commerce Corp.*,
  337 U.S. 682 ......................................................................................................... 10

*Mobile Cty. Jail Inmates v. Purvis*,
  581 F. Supp. 222 (S.D. Ala. 1984)........................................................................ 11

*Ramos v. Sessions*,
   293 F.Supp.3d 1021 (N.D. Cal. Mar. 13, 2018) ....................................................... 13

*Roman v. Ashcroft*,
   340 F.3d 314 (6th Cir. 2003) ............................................................................... 11, 12

*Rumsfeld v. Padilla*,
   542 U.S. 426 (2004) .............................................................................................. 9, 11

*Sales v. Johnson*,
   323 F.Supp.3d 1131 (N.D. Cal. 2017) ....................................................................... 11

*Sales v. Johnson*,
   No. 16-cv-01745-EDL, 2017 WL 6855827 (N.D. Cal. 2017) ................................... 13

*Saravia v. Sessions*,
   280 F.Supp.3d 1168 (N.D. Cal. 2017) ....................................................................... 12

*Smith v. Idaho*,
   392 F.3d 350 (9th Cir. 2004) ...................................................................................... 9

*Workman v. Mitchell*,
   502 F.2d 1201 (1974) ................................................................................................ 13

*Zabadi v. Chertoff*,
   No. C05-01796 WHA, 2005 WL 1514122 (N.D. Cal. June 17, 2005) ...................... 12

**STATUTES**

28 U.S.C. § 1331 ............................................................................................................ 10, 11

28 U.S.C. § 2254 .................................................................................................................... 9

**RULES**

Fed. R. Evid. 602 .................................................................................................................... 2

**REGULATIONS**

8 C.F.R. § 236, 241 .............................................................................................................. 12

8 C.F.R. § 241 ...................................................................................................................... 12

1

## I.    **INTRODUCTION**

2         Defendants' Response to Order to Show Cause (ECF 61) ("Response") is, in essence, a

3 request for reconsideration of the Court's temporary restraining order requiring the release of

4 Petitioners Medina Calderón, Lavrus, Joseph, and Solorio Lopez ("TRO") (ECF 38). This

5 request for reconsideration, however, does not set forth any factual or legal grounds that would

6 remotely justify a different outcome today, three weeks after the TRO was issued. The Court

7 should proceed to issue a Preliminary Injunction consistent with the TRO and subsequent orders

8 of release regarding these four Petitioners (ECF 38, 43, and 44-47).

9         In the month that has passed since Defendants filed their response to Petitioners' Motion

10 for TRO, ICE has done little to improve upon its response to the COVID-19 pandemic—an

11 approach that the Court has already found exposes Petitioners to a likelihood of irreparable

12 injury. ECF 38 at 8. Today, there are over *thirteen times* as many confirmed COVID-19 cases in

13 ICE custody as the day this Court issued the TRO. Despite the Court's recognition that the

14 population levels at the time of the TRO made social distancing impossible for Petitioners,

15 Defendants have *increased* the population at Mesa Verde and maintained a stable population at

16 Yuba since the time of their last filing. Although Defendants attempt to project the appearance of

17 a comprehensive approach to the crisis by submitting eight fact declarations in support of their

18 Response (ECF 61-1 through 61-8), only five of the 104 numbered paragraphs in these

19 declarations are new, and two other paragraphs each contain a single updated statistic. Six of the

20 eight declarations (ECF 61-2, 61-3, 61-4, 61-6, 61-7 and 61-8) are simply copies of declarations

21 previously submitted in connection with Defendants' opposition to the TRO (ECF 25-1, 25-2,

22 25-3, 25-4, 29-1, and 29-2). Even the two "new" declarations from Erik Bonnar and Polly

23 Kaiser, are largely recycled; 26 out of their 32 numbered paragraphs repeat, verbatim, text that

24 was submitted in their prior declarations.

25         Defendants have offered no assurance that Petitioners would actually be able to maintain

26 six feet of distance from others if they were returned to detention. Defendants' declarations do

27

28

not describe *any* changes that would prevent Petitioners from being "constantly exposed" to other people—including people newly booked into detention (ECF 3-5 ¶ 21), from having to line up "inches apart" (ECF 3-4 ¶ 10), or from having to sleep within arm's length of one another (ECF 3-5 ¶ 10). Defendants offer *no* evidence demonstrating a meaningful change to the conditions Petitioners have described to this Court. To this day, Defendants also have failed to present *even one medical or public health expert* to address the powerful testimony of Petitioners' experts that the ICE detention facilities in Mesa Verde and Yuba are dangerous tinderboxes. Apparently, there is no expert willing to say that these centers are even remotely safe for Petitioners. The TRO should be converted into a preliminary injunction.

## II.   MOTION TO STRIKE PORTIONS OF SUPPORTING DECLARATIONS

For the reasons stated in our Reply re TRO (ECF 26 at 3-4), the Court should strike the following paragraphs of each of the recycled declarations of Capt. Jennifer Moon as incompetent under Fed. R. Evid. 602: ECF 61-4, ¶¶ 7-20 and ECF 61-8, ¶¶ 7-19. Capt. Moon's proffered testimony, in addition to now being one month old, was clearly *not* based on personal knowledge. Her only personal knowledge is that, as of one month ago, ICE was "tracking the outbreak, regularly updating infection prevention and control *protocols,* and issuing *guidance* to field staff on screening and management of potential exposure among detainees." ECF 61-4 ¶ 5; ECF 61-8 (emphasis added). Her remaining statements are, at best, three levels of hearsay removed from knowledge of what is happening at either facility.

## III.   REPLY TO RESPONDENTS' STATEMENT OF FACTS

Petitioners here respond only to new facts presented by Defendants, since previously presented facts have already been fully considered by the Court. In response, Petitioners submit additional declarations written by two of their experts, Dr. Robert Greifinger and Dr. Sandra Hernandez, since the TRO was entered in this case. Attached as Exhibits B and C to the Declaration of Hayden Rodarte are (1) a declaration of Dr. Greifinger previously submitted in *Zepeda Rivas v. Jennings,* No. 3:20-cv-02731-VC ("Greifinger First. Supp.") and (2) a

declaration of Dr. Hernandez previously submitted in *Zepeda* ("Hernandez Supp."). Also submitted separately herewith is an additional declaration of Dr. Greifinger ("Greifinger Second Supp."), which addresses the few new pieces of information in Mr. Bonnar and Ms. Kaiser's declarations. Also attached to the Rodarte Declaration as Exhibit A are a graph and chart demonstrating the alarming recent increase in known COVID-19 infections in ICE detention facilities nationwide.

**A.      ICE's Claimed Remedial Measures Are Utterly Ineffectual**

**1.      ICE's "Pandemic Response Requirements" Are Insufficient**

Mr. Bonnar and Ms. Kaiser state in identical terms that, on April 10, 2020, ICE released new "guidance" titled "Pandemic Response Requirements" ("PRR")[1] setting forth certain "mandatory requirements" and "best practices" for facilities to ensure that "available mitigation measures are implemented." ECF 61-1 ⁋ 7; ECF 61-5 ⁋ 7. But Dr. Greifinger has reviewed the PRR and concluded that its "protocols fall short of what is needed to address the threats" at Mesa Verde and Yuba. Greifinger First Supp. ⁋ 46. Moreover, "guidance" documents are hardly self-executing, and many of the PRR's recommendations, including the most critical recommendations regarding social distancing, are not being followed. *Id.* ⁋⁋ 46, 47. Many of the measures outlined in the PRR are mere recommendations to be implemented "whenever possible" or "if practicable," and they are "impossible to carry out given the limits of the infrastructure." *Id.* ⁋⁋ 47, 47(b). Moreover, yet again, ICE fails to produce a single declaration from anyone who actually works inside either Mesa Verde or Yuba to establish that any of the measures set forth in the guidance document are actually being implemented.

But the most powerful evidence against the effectiveness of ICE's guidance comes from ICE itself in the form of its daily tracking of "confirmed cases" inside its detention facilities nationwide. Rodarte ⁋ 2 and Ex. A. On April 8, the day that the Court granted the TRO releasing these four Petitioners, the confirmed case count among detainees was 32. As of April 28, it had

---

[1] Defendants have not presented the PRR to the Court, but state that it can be found at: https://www.ice.gov/doclib/coronavirus/eroCOVID19responseReqsCleanFacilities.pdf

increased over 13-fold to 425. *Id.* Nationwide, ICE has administered only 705 COVID-19 tests among its tens of thousands of detainees. *Id.* The "guidance" is clearly having no discernible impact on the spread of COVID-19.

**2.     The Claim That There Are No Suspected or Confirmed COVID-19 Cases in Mesa Verde or Yuba is Not Credible**

Defendants insist, as they have throughout this litigation, that there are no "suspected or confirmed" COVID-19 cases in Mesa Verde or Yuba. Response at 4; ECF 25 at 2. But their claim is meaningless, because ICE concedes that "many individuals infected with COVID-19 do not display symptoms" (PRR at 11), and because Defendants admit that since the beginning of the pandemic they have tested only *two* out of the many hundreds of detainees housed at Mesa Verde and Yuba (ECF 61-1 ⁋ 12; ECF 61-5 ⁋ 12). ICE's testing regime is "clearly inadequate." Greifinger Second Supp. ⁋ 12. As a result, any claim that there are no cases of COVID-19 at Mesa Verde or Yuba are simply not credible. And even if this claim could be believed, that would still not support denial of a preliminary injunction and the forced return of Petitioners to detention. As public health expert Dr. Sandra Hernandez testified without contradiction, it is not a matter of *if*, but *when* an outbreak will occur in these facilities. ECF 4-23 ⁋ 26.

**3.     Defendants' Claim That They Are Reducing Detainee Populations Is Misleading**

Defendants claim that "ICE has taken affirmative steps to reduce the number of immigration detainees at Mesa Verde and Yuba" (ECF 61 at 4), but this misleading claim is contradicted by ICE's own evidence, which reveals that the combined population of Mesa Verde and Yuba has *increased* in the last three weeks. On April 2, 2020, Mesa Verde housed 286 detainees and Yuba housed 150, for a total of 436 (*see* ECF 61-2 ⁋ 2 and 61-6 ⁋ 2); as of April 22, 2020, that number had increased to 295 at Mesa Verde and only slightly decreased to 143 at Yuba, for a total of 438 (*see* ECF 61-1 ⁋ 8 and ECF 61-5 ⁋ 8). Presumably, this new headcount is *net of* at least eight Petitioners released as a result of this litigation—six by order of the Court. In

other words, as this Court has ordered detainees to be released, ICE has replaced them with new arrivals.

Defendants appear to believe that once Mesa Verde's and Yuba's detainee populations have been reduced to "less than 75% of [their] capacity," their job will be done and the facilities somehow safe. Bonnar, ECF 61-1 ⁋ 8; Kaiser, ECG 65-5 ⁋ 8 (Yuba at 66% of capacity, but "numbers fluctuate on a daily basis"). Defendants present no basis whatsoever to support their apparent belief that either facility somehow becomes safe at a designated percentage of its stated capacity. As Dr. Greifinger testifies, the 75% threshold suggested in the PRR is arbitrary and inadequate. Greifinger First Supp. ⁋ 48(a). *Defendants have not tried to prove—nor could they— that merely reaching 75% of total capacity in the aggregate will actually enable detainees to achieve the necessary social distancing.*[2]

### 4.   Defendants Have Taken Virtually No Steps to Achieve Social Distancing

The CDC recommends, and Petitioner's experts testified without contradiction, that social distancing is a critical mitigation strategy for containing the spread of COVID-19. ECF 4-19 (Golub) ⁋ 10; ECF 4-20 (Stern) ⁋⁋ 7-8; ECF 4-12 (Hernandez) ⁋ 13; ECF 4-22 (Greifinger) ⁋ 10; ECF 4-24 (Keller) ⁋ 8. As Dr. Greifinger states, "the importance of social distancing in preventing the spread of COVID-19 is unparalleled;" it is "the single most critical tool to limit risk of COVID infection" and, without it, "other mitigation measures are markedly less effective in halting or slowing the spread of disease." Greifinger Second Supp. ⁋ 5; *see also* Greifinger First Supp. ⁋ 30. This requires detainees to maintain a distance of at least ten feet from each other while sleeping and six feet from each other at all times, including while eating, bathing, recreating, and engaging in any other activities. Greifinger First Supp. ⁋⁋ 43,45.

Yet Ms. Kaiser is unable to identify *any steps whatsoever* taken at Yuba to implement any form of social distancing. ECF 61-5 ⁋ 10. Nor have any distancing measures been reliably

---

[2] Moreover, Defendants' aggregation of population data masks extreme overcrowding in certain sleeping quarters. For example, as noted below, at least Dorm C at Mesa Verde currently operates at 98-100% of capacity.

documented at Mesa Verde. The only half-hearted attempt at claiming *any* protective measures at

Mesa Verde involves sleeping arrangements; nothing whatsoever is said about eating facilities,

bathrooms, or any other areas.

Even as to the sleeping areas at Mesa Verde, the evidence is so incomplete as to be

utterly non-probative and highly suspicious. Mr. Bonnar claims (without asserting first-hand

knowledge) that "MVDF has, *when possible*, staggered beds" in two dormitories and "[t]he same

will be done in the remaining dormitories *when space permits*." ECF 61-1 ¶ 11(f) (emphasis

added). These elliptical statements leave a host of questions unanswered: what does "staggering"

even mean? If bunks are "staggered," how far apart are they placed from each other? Are

detainees still sleeping in top and bottom bunks? How many bunks have actually been

"staggered"? How many will ultimately be "staggered," and how many will be left as is? How

can "space permit" future "staggering" when there are now *more* detainees at Mesa Verde than

there were three weeks ago? Testimony submitted in the *Zepeda Rivas* litigation, only a few days

before Mr. Bonnar's declaration, makes clear that whatever changes Defendants have made to

the bunk beds at Mesa Verde, it has not enabled meaningful social distancing in the sleeping

quarters: "[t]he bunk beds are spaced less 6 feet from each other because I can reach over to

touch the other bed. … and, while there is no detainee sleeping in the bottom bunk, there are

detainees sleeping in the bunks next to mine." Dec. of Coraima Sanchez, *Zepeda Rivas et al., v.*

*Jennings*, No. 3:20-cv-02731-VC, ECF 6-5 (N.D. Cal. Apr. 20, 2020).

### 5. Unless Social Distancing Can Be Achieved, Other Measures Will Be Inadequate

In view of Dr. Greifinger's testimony that without social distancing, "other mitigation

measures are markedly less effective in halting or slowing the spread of disease" (Greifinger

Second Supp. ¶ 5), the other partial remedial measures set forth by Defendants are insufficient to

establish that they have a credible plan to halt the spread of COVID-19 at Mesa Verde and Yuba.

**Sanitation.** Defendants claim to have made improvements in sanitation, but here again their claims are suspiciously vague. At Yuba, the facility is "sanitized twice daily" and detainees are given "additional cleaning supplies" (ECF 61-5 ¶¶ 10(g)-(h)), but detainees are apparently still required to perform these tasks, and there is no indication that they are being given gloves or protective shoes, or what the "additional" supplies are. Each detainee is now given "a bar of soap" but still no hand sanitizer. *Id.* ¶ 10(i). Defendants make marginally more specific comments regarding additional cleansing steps taken at Mesa Verde (ECF 61-1 ¶ 11), but there, too, "increased sanitation frequency" only means that detainees are told to clean their own areas more often, apparently still without protective equipment.

**Face coverings.** Defendants claim that Yuba has issued "washable cloth masks" to all detainees (ECF 61-5 ¶ 10(j)) and cites CDC guidance recommending "face coverings in public settings where other social distancing measures are difficult to maintain" (ECF 61-1 ¶ 11(d) & n.2), but fail to acknowledge that the same CDC guidance warns: "Continue to keep about 6 feet between yourself and others. The cloth face cover is not a substitute for social distancing."[3] Defendants also state that Mesa Verde recently "began distributing surgical masks to detainees" and that these masks will be periodically replaced, "supplies permitting," (ECF 61-1 at 11(d)), but once again, omit to say anything about how many masks they have in stock or how long the supply will last.

Defendants' declarations prove that they have taken remarkably little action to mitigate the risk to Petitioners while re-stocking Mesa Verde and Yuba with new arrivals. At the same time, they have still not contradicted any of Petitioners' medical experts concerning the serious dangers faced by medically vulnerable persons in these facilities.

**B.   Petitioners**

Defendants' descriptions of the backgrounds, immigration status and health conditions of Petitioners Medina Calderon, Lavrus, Joseph and Solorio Lopez (Response at 11) largely repeat

---

[3] CDC, *How to Protect Yourself & Others*, *available at* https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (Apr. 24, 2020).

1  Defendants' statements with respect to these Petitioners in their Opposition to Motion for TRO

2  (ECF 25 at 6-7). Specifically, Defendants again acknowledge that Petitioners Medina Calderon

3  and Lavrus suffer from diabetes; Petitioner Joseph suffers from asthma; and Petitioner Solorio

4  Lopez is 82 years old and suffers from a variety of medical conditions. *Id.* The Court has already

5  found that these four Petitioners have "clearly shown" that they "are at high risk of severe illness

6  if infected with COVID-19" (ECF 38 at 6), and that, as a result, they "have made a strong

7  showing that respondents' detaining them in the above-referenced conditions, in spite of their

8  knowledge of said petitioners' respective high-risk status," is excessive in relation to

9  respondents' asserted purposes of detention. *Id.* at 7. Since respondents have offered no

10  additional evidence concerning the circumstances of the individual Petitioners, or even any

11  argument that the Court erred in considering this information, no further discussion is required

12  here.

13  **IV.  ARGUMENT**

14          Defendants' legal argument largely repeats points that have already been submitted to,

15  and considered by, the Court. Accordingly, while Petitioners will respond to each argument, we

16  will do so in relatively truncated form, focusing on any arguments that Defendants have not

17  previously presented.

18          In addition, Petitioners inform the Court that Judge Chhabria just today issued an order

19  provisionally certifying a class of all detainees at Mesa Verde and Yuba and granting a

20  temporary restraining order, directing ICE "to provide information to class counsel and the Court

21  to facilitate the consideration of applications by detainees to be released on bail while this case is

22  pending." Order, ECF 53 (4/29/20) at 1, *Zepeda Rivas v. Jennings,* No. 20-cv-02731-VC. Judge

23  Chhabria found that a preliminary injunction was warranted because, *inter alia,* "plaintiffs have

24  demonstrated an exceedingly strong likelihood that they will prevail on their claim that current

25  conditions at the facilities violate class members' due process rights by unreasonably exposing

26  them to a significant risk of harm." *Id.* at 3.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.     The Court Has Jurisdiction Over Petitioners' Claims

The Court should reject Defendants' argument that it lacks jurisdiction because Plaintiffs are physically detained outside of this District. *See* Opp. at 12-13. As a threshold matter, Defendants waived their jurisdictional arguments by failing to raise them when they responded to the merits of Petitioners' TRO motion. The immediate custodian rule that Defendants raise implicates personal jurisdiction, not subject-matter jurisdiction, and thus can be waived. *See Rumsfeld v. Padilla*, 542 U.S. 426, 452 (2004) (Kennedy, J., concurring); *cf. Smith v. Idaho*, 392 F.3d 350, 355 (9th Cir. 2004) (immediate custodian rule is matter of personal jurisdiction and not subject-matter jurisdiction in habeas petitions challenging state custody under 28 U.S.C. § 2254). It has been waived here. Defendants have appeared in this matter and responded to the merits of Petitioners' TRO without objecting to the Court's jurisdiction. They cannot object now. *See Cruz-Zavala v. Barr*, 2020 WL 1904469, n.3 (N.D. Cal. Apr. 17, 2020) (defendants waived jurisdictional arguments under immediate custodian rule when they responded to merits of habeas TRO without making limited appearance or objecting to jurisdiction).

The Court also need not reach the habeas immediate custodian issue because Plaintiffs concurrently brought their claims under 28 U.S.C. § 1331, and the Court therefore has independent jurisdiction over Plaintiffs' claims for declaratory and injunctive relief. *See* Complaint ¶ 31. See also, e.g., *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 697-99, nn.18-19 (1949); *Ex Parte Young*, 209 U.S. 123, 145 (1908). Defendants have not disputed that § 1331 jurisdiction over named Defendants is proper and that venue lies in this District. Plaintiffs' claims under § 1331 draw on the well-established principle that injunctive relief in the form of release is an appropriate remedy for unconstitutional conditions of confinement caused by overpopulation. *See, e.g.*, *Brown v. Plata*, 563 U.S. 493, 511 (2011) (affirming order directing California prisons to release people to remedy unconstitutional conditions caused by overcrowding); *Duran v. Elrod*, 713 F.2d 292, 297-98 (7th Cir. 1983), *cert. denied*, 465 U.S. 1108 (1984) (concluding that court did not exceed its authority in directing

release of low-bond pretrial detainees as necessary to reach a population cap); *Mobile Cty. Jail Inmates v. Purvis*, 581 F. Supp. 222, 224-25 (S.D. Ala. 1984) (concluding that district court properly exercised remedial powers to order a prison's population reduced to alleviate unconstitutional conditions and noting other cases); *Inmates of the Allegheny Cty. Jail v. Wecht*, 565 F. Supp. 1278, 1297 (W.D. Pa. 1983) (order to reduce overcrowding "is within our power to correct the constitutional violations"); *Brenneman v. Madigan*, 343 F. Supp. 128, 139 (N.D. Cal. 1972) ("If the state cannot obtain the resources to detain persons . . . in accordance with minimum constitutional standards, then the state simply will not be permitted to detain such persons."). Given the irreparable harm facing Plaintiffs every day, Plaintiffs urge this court to avoid wading into the issue of habeas jurisdiction, and simply proceed under § 1331.

Should the Court reach the issue, habeas jurisdiction is proper. Defendants' insistence that the only proper respondents are located in the Eastern District is based on *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004), but *Padilla* expressly reserved the question whether its rule applies in the immigration detention context. *Id*. at 435 n.8. Numerous judges in this District subsequently held that *Padilla*'s immediate custodian rule does not apply to immigration detainees. *See, e.g., Carmona v. Aitken*, No. 14-CV-05321-JSC, 2015 WL 1737839, at *4 (N.D. Cal. 2015); *Sales v. Johnson*, 323 F.Supp.3d 1131, 1138 (N.D. Cal. 2017); *Doe v. Barr*, No. 20-CV-02263, 2020 WL 1984266, *4-5 (N.D. Cal. Apr. 27, 2020).[4]

Where, as here, "a petitioner is held in a facility solely pursuant to a contract, rather than by the state or federal government itself," the petitioner should sue a federal immigration official, not the detention facility's warden. *Saravia v. Sessions*, 280 F.Supp.3d 1168, 1185 (N.D. Cal. 2017) (Chhabria, J.), *aff'd*, 905 F.3d 1137 (9th Cir. 2018). The ICE Field Office Director ("FOD") is a proper respondent because he "has full authority to direct the local warden to

---

[4] Even if the rule does apply to immigration detainees, the Supreme Court has suggested that it would be satisfied by naming the supervisory federal agency official responsible for custodial decisions rather than a contracted warden. The Court in *Padilla* cited to *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003), as an example of a court applying the immediate custodian rule. *See Padilla* at n.8. In *Roman*, the Sixth Circuit rejected the notion that the warden is the proper respondent, and explained instead that the INS District Director is the proper respondent, as he or she "has power over" immigrant habeas corpus petitioners. *Id*. at 320.

release petitioner." *Zabadi v. Chertoff*, No. C05-01796 WHA, 2005 WL 1514122 at *3 (N.D. Cal. June 17, 2005); *see also Khodr v. Adduci*, 697 F.Supp.2d 774, 776 (E.D. Mich. 2010) (same); *Roman v. Ashcroft*, 340 F.3d 314, 320-222 (6th Cir. 2003) (same). This is consistent with governing regulations, which provide that the Field Office Director is responsible for making custody determinations. See 8 C.F.R. §§ 236(d), 241.4(d).

     *Saravia* defines the "official with most immediate control over the facility" as the "official tasked with ensuring that [the detention facility] complies with the requirements of its contract." *Saravia*, 280 F.Supp.3d at 1186. Here, Defendants' own evidence shows that the San Francisco Field Office is responsible for oversight of Mesa Verde and Yuba, and that it directs the implementation of processes in response to COVID-19 at these facilities. See Bonnar, ECF 61-1 ¶ 2 (his responsibility "includes … oversight of aliens detained at the Mesa Verde Detention Facility ("MVDF") pending removal"); Kaiser, ECF 61-5 ¶ 2 (her responsibility "includes … oversight of aliens detained at the Yuba County Jail ("YCJ") pending removal").[5]

### B. Petitioners Have Article III Standing

     Defendants acknowledge that the Court considered and rejected their argument that Petitioners do not have standing because their injury is "speculative," but reassert the argument based only on the fact that another month has passed without a "confirmed or suspected" case of COVID-19. Response at 14-15. This argument completely ignores the controlling legal principle, accepted by the Court, that standing can be predicated on "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney,* 509 U.S. 25, 33 (1993). *See also*, Motion for TRO at 14-15. It is also factually meaningless since it is predicated on the near-total absence of testing.

---

[5] In addition, ICE publicly identifies the San Francisco Field Office as controlling Mesa Verde and Yuba and directs all comments and complaints regarding these facilities to be filed with the FOD in San Francisco. *See* https://www.ice.gov/detention-facility/mesa-verde-ice-processing-facility and https://www.ice.gov/detention-facility/yuba-county-jail (Apr. 25, 2020) (identifying each facility as controlled by the "San Francisco Field Office" and specifically directing "Feedback or Complaints" to the San Francisco Field Office Director).

1

**C.      Release is the Appropriate Remedy for a Conditions of Confinement Claim**

2      Defendants ask the Court to reconsider its finding (ECF 38 at 4) that the writ of habeas

3   corpus is available to deal with questions concerning the duration and conditions of confinement.

4   *Workman v. Mitchell,* 502 F.2d 1201, 1208 n.9 (1974). Defendants have cited no supervening

5   authority. Rather than repeat prior argument here, Plaintiffs rest on their prior submissions (ECF

6   4 at 18-20; ECF 26 at 13-14).

7      **D.      Petitioners Satisfy the Requirements for a Preliminary Injunction**

8              **1.      Petitioners Have Shown Likelihood of Succeeding on the
                         Merits**

9

10                    **a.      The Court may order release notwithstanding
                               Defendants' assertion of "mandatory detention"**

11

12      Defendants claim that Petitioners may not be released because they are subject to

13   "mandatory detention" provisions of the Immigration & Nationality Act that prevent *the*

14   *government* from releasing certain detainees. This argument, however, ignores that *courts*

15   regularly release detained immigrants when their continued detention, even if required by statute,

16   violates the constitution.[6]

17                    **b.      Petitioners have established that the conditions of
                               confinement violate the Fifth Amendment**

18

19      Defendants' argument here is lifted almost verbatim from argument in previous briefs

20   that have been considered and rejected. In the absence of new argument, Petitioners respectfully

21   rest on their prior submissions (ECF 4 at 14-17; ECF 26 at 11-13).

22

23

24   [6] *See, e.g., Doe v. Barr*, No. 20-cv-02141-LBR, 2020 WL 1820667, at *9-10 (N.D. Cal. Apr. 12, 2020) (ordering
     Petitioner detained under 1226(c) released from Yuba); *Bent v. Barr*, No. 19-cv-06123-DMR, 2020 WL 1812850 at

25   *4-6 (N.D. Cal. Apr. 9, 2020) (same from Mesa Verde); *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL1082648
     (N.D. Cal. 2020) (detainee charged with drug trafficking and convicted of accessory after the fact); *Ramos v.*

26   *Sessions*, 293 F.Supp.3d 1021, 1030-31 (N.D. Cal. Mar. 13, 2018); (two prior DUI convictions); *Sales v. Johnson*,
     No. 16-cv-01745-EDL, 2017 WL 6855827, at *6 (N.D. Cal. 2017) (prior second-degree murder conviction);

27   *Judalang v. Chertoff*, 562 F.Supp.2d 1119 (S.D. Cal. 2008) (prior voluntary manslaughter conviction).

28

### 2. Petitioners Have Shown Irreparable Harm

At the TRO stage, the Court had no difficulty finding that these four Petitioners had shown irreparable harm based on the risks to which they were being exposed in confinement. ECF 38 at 7-8. Defendants repeat the same legal argument, which need not be rebutted again here, and also seek to enlarge their factual showing to include several modest steps to address the threats posed by the pandemic. As set forth above, however, given the undisputable fact that Defendants have done virtually nothing to facilitate the necessary social distancing, it is clear that these steps do not meaningfully reduce the risk that a COVID-19 outbreak will occur in both facilities (if it is not already silently occurring) and that, when it does, it will severely threaten not only Petitioners but facility staff and the surrounding communities. On the record before this Court, Petitioners have shown that the risk of irreparable harm is still very much present.

### 3. The Balance of Interests and Public Interest Favor Petitioners

In its TRO Order, the Court correctly found that the balance of interests and public interest favored Petitioners. ECF 38 at 8. In the absence of new argument from Defendants, Petitioners respectfully refer to their prior submission on this point (ECF 4 at 21-22).

### E. The Preliminary Injunction Should Not Contain a "Self-Executing Expiration Date" or Additional Conditions of Release

Defendants argue, yet again, for two conditions of release previously rejected by the Court (*see* Order re: Joint Statement Regarding Release Conditions, ECF 41 at 1-2): the right to immediately re-detain, without notice, a Petitioner alleged to have violated a condition of release or is subject to a final order of release and for whom a new travel order is retained. The Court properly ruled that in the event Defendants believe either of these situations has arisen, Defendants "may move the Court for reconsideration of the order of release." *Id.* at 2. For the reasons previously stated (ECF 41 at 6), Petitioners believe these conditions were properly rejected.

1    Defendants also seek two new conditions of release, not previously argued to the Court.

2    First, Defendants would require that, prior to seeking approval from the Court to change

3    residence, a Petitioner would need to obtain approval from their parole officer (if any) and

4    provide certain identifying information to Defendants concerning the person at the new residence

5    who will be responsible for the Petitioner. Although Petitioners do not object to a condition

6    requiring them to provide updated information to Defendants if their residences change,

7    Petitioners respectfully request that when a change of residence is necessary in response to an

8    unforeseen or emergency situation, such as a natural disaster or to escape domestic violence, the

9    Court permit such update to occur within a reasonable time *after* the Petitioner has moved.

10    Second, Defendants ask that the injunction automatically dissolve within 24 hours of any

11    applicable shelter-in-place orders. This proposal makes no sense, either for the safety of the

12    Petitioners or as a matter of public health. As the Court is well aware, the eventual dissolution of

13    shelter-in-place orders will not mean that COVID-19 has been eliminated, only that the rates of

14    new infection and death are no longer continuing to spiral upward. So long as the coronavirus

15    remains present, congregate environments will continue to pose the same risks to those inside as

16    they do today, "even if things improved somewhat outside the detention facilities." Supp.

17    Hernandez ¶ 33. And they may pose even greater risks as "hot spots" that could cause a fresh

18    outbreak of COVID-19 in their surrounding communities. *Id.* Thus, an automatic dissolution of

19    this injunction could be catastrophic. If Defendants believe that conditions have changed

20    sufficiently to warrant dissolution of the injunction, they should be required to submit to move

21    the Court and prepared to demonstrate why the injunction should be lifted.

22  **V.   CONCLUSION**

23    For the foregoing reasons, Defendants have failed to show why a Preliminary Injunction

24    should not issue, and the Court should now proceed to enter a Preliminary Injunction, consistent

25    with the terms of its Temporary Restraining Order (ECF 38), confirming the release of

26

27

28

Petitioners Medina Calderon, Lavrus, Joseph, and Solorio Lopez. A proposed order is submitted

herewith.

Dated: April 29, 2020                          Respectfully submitted,

                                               /s/ William S. Freeman
                                               William S. Freeman
Bree Bernwanger                                Sean Riordan
Tifanei Ressl-Moyer                            Angélica Salceda
Hayden Rodarte                                 AMERICAN CIVIL LIBERTIES UNION
LAWYERS' COMMITTEE FOR                         FOUNDATION OF NORTHERN
CIVIL RIGHTS OF                                CALIFORNIA
SAN FRANCISCO BAY AREA

                                               Manohar Raju
Judah Lakin                                    Public Defender
Amalia Wille                                   Matt Gonzalez
LAKIN & WILLE LLP                              Chief Attorney
                                               Francisco Ugarte
                                               Genna Ellis Beier
Jordan Wells                                   Emilou H. MacLean
Stephanie Padilla                              OFFICE OF THE PUBLIC DEFENDER
AMERICAN CIVIL LIBERTIES UNION                 SAN FRANCISCO
FOUNDATION OF SOUTHERN
CALIFORNIA

                                               *Attorneys for Petitioners-Plaintiffs*