WILLIAM S. FREEMAN (SBN 82002)
wfreeman@aclunc.org
SEAN RIORDAN (SBN 255752)
sriordan@aclunc.org
ANGÉLICA SALCEDA (SBN 296152)
asalceda@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493
Facsimile: (415) 255-8437

*Attorneys for Petitioners-Plaintiffs*
Additional Counsel Listed on Following Page

MANOHAR RAJU (SBN 193771)
Public Defender
MATT GONZALEZ (SBN 153486)
Chief Attorney
FRANCISCO UGARTE (CA SBN 241710)
francisco.ugarte@sfgov.orga
GENNA ELLIS BEIER (CA SBN 300505)
genna.beier@sfgov.org
EMILOU H. MACLEAN (CA SBN 319071)
emilou.maclean@sfgov.org
OFFICE OF THE PUBLIC DEFENDER
SAN FRANCISCO
555 Seventh Street
San Francisco, CA 94103
Direct: 415-553-9319
Fax:    415-553-9810

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| Sofia Bahena Ortuño; Gennady Valeryevich Lavrus; Claude Bent; Charles Joseph; Salomon Medina Calderon; Ricardo Vasquez Cruz; J Elias Solorio Lopez; Olvin Said Torres Murillo; Julio Cesar Buendia Alas; Marco Montoya Amaya; Mauricio Ernesto Quinteros Lopez; Roxana del Carmen Trigueros Acevedo; Ernesto Ambrocio Uc Encarnacion;<br><br>Petitioners-Plaintiffs,<br><br>v.<br><br>DAVID JENNINGS, Acting Director of the San Francisco Field Office of U.S. Immigration and Customs Enforcement; MATTHEW T. ALBENCE, Deputy Director and Senior Official Performing the Duties of the Director of the U.S. Immigration and Customs Enforcement; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondents-Defendants. | Case No. 3:20-CV-02064-MMC<br><br>**SECOND SUPPLEMENTAL DECLARATION OF ROBERT B. GREIFINGER, MD**<br><br>JUDGE: MAXINE M. CHESNEY |

BREE BERNWANGER* (NY SBN 5036397)
bbernwanger@lccrsf.org
TIFANEI RESSL-MOYER (SBN 319721)
tresslmoyer@lccrsf.org
HAYDEN RODARTE (SBN 329432)
hrodarte@lccrsf.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS OF
SAN FRANCISCO BAY AREA
131 Steuart St #400
San Francisco, CA 94105
Telephone: (415) 814-7631

JUDAH LAKIN (SBN 307740)
judah@lakinwille.com
AMALIA WILLE (SBN 293342)
amalia@lakinwille.com
LAKIN & WILLE LLP
1939 Harrison Street, Suite 420
Oakland, CA 94612
Telephone: (510) 379-9216
Facsimile: (510) 379-9219

JORDAN WELLS (SBN 326491)
jwells@aclusocal.org
STEPHANIE PADILLA (SBN 321568)
spadilla@aclusocal.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF SOUTHERN
CALIFORNIA
1313 West Eighth Street
Los Angeles, CA 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

*Attorneys for Petitioners-Plaintiffs*
*Motion for Admission *Pro Hac Vice*
Pending

SECOND SUPPLEMENTAL DECLARATION OF ROBERT B. GREIFINGER, MD

## Second Supplemental Declaration of Robert B. Greifinger, MD

I, Robert B. Greifinger, declare as follows:

1. I am a physician who has worked in health care for prisoners for more than 30 years. I have managed the medical care for inmates in the custody of New York City (Rikers Island) and the New York State prison system. I have been an independent consultant on prison and jail health care since 1995. My clients have included the U.S. Department of Justice, Division of Civil Rights (for 23 years) and the U.S. Department of Homeland Security, Section for Civil Rights and Civil Liberties (for six years). I am familiar with immigration detention centers, having toured and evaluated the medical care in approximately 20 immigration detention centers, out of the several hundred correctional facilities I have visited during my career. I currently monitor the medical care in three large county jails for Federal Courts.

2. I provided two earlier declarations in this case, dated March 24, 2020 and March 30, 2020, and now provide this supplemental declaration after reviewing materials provided by the Defendants to the Court concerning the adequacy of ICE's response to the coronavirus pandemic at Mesa Verde Detention Center and Yuba County Jail.

3. In addition to the documents I reviewed previously, I have reviewed the following declarations filed on April 22, 2020: the April 22, 2020 declaration of Erik Bonnar concerning Mesa Verde ("Bonnar Declaration"), the April 22, 2020 declaration of Polly Kaiser concerning Yuba County Jail ("Kaiser Declaration"), and the two declarations of Capt. Jennifer Moon dated March 26, 2020 and March 27, 2020 ("Moon Declarations").

4. From the evidence I have reviewed, it is my opinion that ICE has failed to adequately comprehend and respond to the COVID-19 pandemic for those detained in ICE custody at Mesa Verde and Yuba County Jail.

5. The importance of social distancing in preventing the spread of COVID-19 is unparalleled. Social distancing is the most critical tool to limit risk of COVID infection. Without proper social distancing in all aspects of the detainee's experience at the facility, other mitigation measures are markedly less effective in halting or slowing the spread of disease.

6. The Bonnar and Kaiser Declarations hardly mention social distancing. As with ICE's April 10 Pandemic Response Requirements, ICE continues to describe social distancing as aspirational. The Bonnar Declaration, for instance, describes that more distance between bunks will be provided at Mesa Verde "when space permits." Social distancing in the middle of this unprecedented pandemic cannot be dependent on "resources" or "availability." Social distancing is a necessity. Moreover, the more time which passes before the implementation of social distancing, the greater the risks of an outbreak at the facility and the greater the likely effects on those at the facility. The fact that a detention center has the "capability" to implement protective measures is irrelevant if those measures are not actually implemented.

7. The Kaiser Declaration does not mention any measures at all to increase social distancing at Yuba. The Bonnar Declaration describes only limited changes at Mesa Verde which purport to increase social distancing, but these can only be described as experimental or piecemeal. Specifically, the Bonnar Declaration vaguely describes "staggered" beds in two of the units at Mesa Verde. This is inadequate for various reasons. First, the two Mesa Verde units with staggered sleeping house a minority of those detained at the detention facility. From recent reports from detainees, and from the Bonnar Declaration, even staggering beds would be impossible in units C and D, which I understand remain effectively at capacity. There is no evidence that ICE is taking steps to release the number of people required to allow even staggered sleeping arrangements to be a possibility elsewhere in the facility. Second, staggering beds such that they are six feet apart does not guarantee that individuals will remain six feet apart in the dormitory. Even getting in and out of beds that are six feet apart from one another would mean that individuals come within the zone of six feet. Third, when considering prolonged contact in confined spaces such as cells and dormitories, six feet of distancing is not enough. Fourth, sleeping arrangements are only one part of the puzzle; social distancing must be guaranteed not just for sleeping, but also for eating, recreation, using the restroom, and all other aspects of a detainee's day. From the declarations of Plaintiffs in this case, even in the units which have staggered sleeping arrangements, there remains inadequate

social distancing not just in sleeping but in other aspects of the days of detained individuals. The Bonnar Declaration's only other reference to social distancing, aside from the staggered sleeping arrangements in two of the units, is an effort to ensure social distancing in the medical unit. This is wholly insufficient.

8. Instead of identifying necessary steps taken to ensure meaningful social distancing, the Bonnar and Kaiser Declarations emphasize other reforms such as the introduction of masks, increased education, and (at Yuba) the taking of detainees' temperatures. These reforms are not a substitute for social distancing, and each has very limited effect without meaningful social distancing.

9. In particular, surgical and cloth masks specifically are intended to help contain infectious droplets in infected people, but they offer no protection to vulnerable people who may breathe in the droplets that are released despite the masks. For this reason, the CDC is clear that masks are not a substitute for social distancing.[1]

10. Similarly, educating detainees about COVID-19 without ensuring that they have the capacity to implement social distancing in their daily lives is inadequate. In a detention center, individual detainees have limitations on their ability to control where, when and how they sleep, eat and go about their lives. Without reforms to ensure that individuals can protect themselves from COVID-19, education has an inherently limited effect.

11. The Kaiser Declaration notes that Yuba County Jail is taking the temperature of detainees on a daily basis. Taking the temperature of detainees neglects the significance of asymptomatic and pre-symptomatic people who are both infected and able to transmit the infection.

12. Testing for COVID-19 at Mesa Verde and Yuba is clearly inadequate from

---

[1] *See, e.g.*, CDC, "Recommendation Regarding the Use of Cloth Face Coverings, Especially in Areas of Significant Community Based Transmission," revised Apr. 3, 2020, at https://www.cdc.gov/coronavirus/2019-ncov/prevent- getting-sick/cloth-face-cover.html (last accessed Apr. 25, 2020) ("It is critical to emphasize that maintaining 6-feet social distancing remains important to slowing the spread of the virus. CDC is additionally advising the use of simple cloth face coverings to slow the spread of the virus and help people who may have the virus and do not know it from transmitting it to others.").

reports that only two people at both facilities have been tested in the months since COVID-19 has been a known risk. If ICE is not testing people, they do not know if there is already an infection, and they cannot take measures to decrease the risk to others. Without substantial testing, I do not consider credible the suggestion that the lack of confirmed cases at either facility means that there is no virus that causes COVID-19 at these facilities.

13. The Declarations affirm the "capability" of testing but note that testing will be conducted when a detainee "experienc[es] symptoms consistent with COVID-19." The CDC identifies as symptoms of COVID-19 fever, cough, shortness of breath or difficulty breathing, chills, repeated shaking with chills, muscle pain, headache, sore throat, and new loss of taste or smell.[2] The Plaintiffs in this case have reported that they and others have experienced such symptoms but have not been tested. Moreover, in any population of more than 400 people over a weeks-long period, such symptoms would be expected among a significant number of people. This leads me to conclude that the screening for symptoms that require testing is severely lacking.[3]

14. Further, the Declarations of Kaiser and Bonnar state that the facilities "have the capability to conduct on-site testing of COVID-19." That is doubtful and indicates a lack of understanding of how testing is accomplished. More likely, the facilities may have the capability to obtain samples and to then send those samples to a laboratory for testing, assuming they have the appropriate swabs and collection vials for transportation to the laboratory.

15. In my opinion, the Moon Declarations presented in this case are of limited utility in evaluating the effectiveness of ICE's COVID-19 response at Mesa Verde and Yuba. Since Capt. Moon appears to be the most senior person identified by Defendants as having responsibility for ensuring the health and safety of detainees at Mesa Verde and Yuba, the gaps and omissions in her declarations are particularly troubling.

---

[2] CDC, "Symptoms of Coronavirus," revised Mar. 20, 2020, at https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last accessed Apr. 25, 2020).

[3] Even the two people tested at Yuba County Jail were not tested because they were symptomatic but because of the possibility that they were exposed prior to their entry into the Yuba County Jail population. Kaiser Declaration ¶ 11.

16. It is now almost one month since the Moon Declarations were signed, which is an extraordinarily long time in terms of this fast-moving pandemic. The fact of continued reliance on month-old declarations is telling about the inadequacy of ICE's response to COVID-19; the failure of the Bonnar and Kaiser Declarations to identify more significant changes at these two facilities over the past month is highly concerning.

17. The Moon Declarations are also vague and not provided by anyone who has a direct role in managing the facilities or the health of detainees. As Captain Moon writes, the ICE Health Service Corps (IHSC) provides "oversight" and "monitor[s]" the medical care at these sites, but IHSC does not provide care or have a management, supervision, implementation or enforcement role at the facilities.

18. Some of the additional flaws of the Moon Declarations are:

   a. The Moon Declarations state that ICE "follow[s] guidance issued by the Centers for Disease Control" without referring to any particular guidance. As elaborated above and in my prior declaration in this case, ICE does not seem to be adhering to CDC guidance in preventing the spread of COVID-19 at these two facilities.

   b. Most glaringly, the Moon Declarations do not acknowledge, let alone explain, how ICE is addressing the need for all detainees and staff to practice social distancing. The failure to ensure meaningful social distancing is a fatal flaw in any policy addressing COVID-19 in a congregate setting.

   c. The Moon Declarations miss the mark in analyzing whether an individual has possible exposure to COVID-19. In considering whether a detainee has possible exposure, ICE's focus on "close contact" with "laboratory-confirmed COVID-19" cases results in a dramatic undercounting of people who may be exposed to COVID-19 by contact with asymptomatic individuals or even symptomatic individuals who have not been tested; or people who have been in contact with individuals with confirmed COVID-

6

|   |   |   |
|---|---|---|
|   |   | 19 but without their knowledge. |
|   | d. | The Moon Declarations, like the Bonnar and Kaiser Declarations, do not adequately recognize the risk posed by staff, vendors and contractors who come to and go from the facility. |
|   | e. | The isolation and quarantine procedures outlined in the Moon Declarations do not comply with best practice. Among other things, as noted previously, the CDC identifies "cohorting" as a suboptimal practice of group quarantining. Where cohorting can be an effective mitigation strategy in the absence of sufficient space for medical isolation, it requires adequate space for appropriate groupings, and there is no evidence that that exists or is being marshalled for this purpose at either of these facilities. |

19. In light of these recognized failures, it is my expert opinion that the response to the threat of COVID-19 in Mesa Verde and Yuba is wholly insufficient to the crisis at hand.

20. It is my professional opinion that the only way to achieve meaningful social distancing in these facilities is to significantly decrease their population levels. The fact that the mitigation measures are so inadequate months into the pandemic leads me to conclude that ICE will not ensure that the protection the health of detainees and the broader communities from the threat of COVID-19 without external intervention.

Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 29th day of April 2020 in New York City, New York.

Robert B. Greifinger, M.D.